Dimmitt v. The Kansas City, St. J. & C. B. Ry. Co.

## DIMMITT v. THE KANSAS CITY, ST. JOSEPH AND COUNCIL BLUFFS RAILROAD COMPANY, *Appellant.*

### DIVISION ONE.

1. **Common Carrier**: LIABILITY BEYOND TERMINUS OF ROUTE: STATUTE. Under the provisions of Revised Statutes of 1879, section 598, relating to common carriers, the carrier, when it receives property to be transported to a place beyond its terminus, is liable as such carrier to the place of the destination of the property, in the absence of a special contract to carry only to the terminus of its own route.

2. ———: ———: ———. The issuance of a receipt or a bill of lading for property to be carried to a point beyond the terminus of the route of the carrier is, under the statute, *prima facie* evidence of a contract by such carrier to carry the property to the place of its destination.

3. ———: ———: ———: NEGLIGENCE. Although the property is, in such case, lost by the negligence of a connecting carrier, the first carrier will be liable therefor, in the absence of a special agreement that it was to be liable only for loss or damage occurring on its own line.

4. ———: CONSTITUTION: STATUTE. Section 240 of Revised Statutes, 1879, is not repugnant to any of the provisions of the state or federal constitution.

*Appeal from Buchanan Circuit Court.*—HON. JOS. P. GRUBB, Judge.

AFFIRMED.

*Strong & Mosman* for appellant.

(1) A station agent has no power to bind the company by a contract for transportation to points beyond its own line, and a contract of that nature entered into by him is void. *Grover v. Baker,* 70 Mo. 672; *Turner v. Railroad,* 20 Mo. App. 632. (2) The defendant's

first instruction should have been given. A recovery against the defendant could not be sustained save upon proof that, *first*, there had been negligence on the part of the Chicago & Northwestern Company, and, *second*, that the loss of said box was the result of such negligence. There was not a scintilla of proof of either of these prerequisites to a recovery. (3) A contract whereby the liability of the company is 'sought to be extended, so as to make the receiving carrier responsible for the goods while the same are in transit over another distinct and independent line, "will not be inferred from loose and doubtful expressions, but must be established by clear and satisfactory evidence. Even the taking of through fare on the receipt of the cattle does not establish such liability." *Myrick v. Railroad*, 107 U. S. 102; *Nutting v. Railroad*, 1 Gray, 502; *Goldsmith v. Railroad*, 12 Mo. App. 484; *Orr v. Railroad*, 21 Mo. App. 336. (4) "Receiving goods marked or directed to some point beyond their regular route is not sufficient evidence of an implied contract to carry them to that place." *Coates v. Railroad*, 45 Mo. 238; *Pendergast v. Express Co.*, 101 Mass. 120; *Crawford v. Railroad*, 51 Miss. 222; *Ins. Co. v. Railroad*, 104 U. S. 158; *Hoagland v. Railroad*, 39 Mo. 451. No such contract or agreement as that alleged in the petition was attempted to be shown in evidence. (5) Nor is the foregoing doctrine changed by the provisions of Revised Statutes, 1879, section 598. None of these duties which the common law casts on a carrier were altered or changed by this statute. *First.* Because "statutes in derogation of the common law are to receive such a construction as not to allow them to infringe upon the rules and principles of the common law to any greater extent than is plainly expressed." *State v. Clinton*, 67 Mo. 380. Because "laws that give origin to new and unexpected departures from general rules should be closely scrutinized, and the powers therein strictly construed." *Smith v. Haworth*, 53 Mo. 88; *Yankee v. Thompson*, 51

Mo. 234. *Second.* Because it will not be presumed that the legislature intended to authorize a proceeding unreasonable in itself, unless the intention is indicated in express terms. *Neenan v. Smith*, 50 Mo. 525. *Third.* A leading maxim in the interpretation of statutes is to reject an interpretation which leads to consequences which it would be disrespectful to the legislature to suppose were designed. *Conner v. Railroad*, 59 Mo. 285. *Fourth.* A proper construction of this statute limits its operation to this state. Presumably, the legislature knew that it could legislate for the state of Missouri only ; that its laws could not have any extra territorial force ; and, presumably, they did not intend that this enactment should apply to interstate shipments. This is supported by the literal words of the statute. Where a statute can be construed consistently with the literal meaning of the words used, the courts will not give it any other construction. *Hicks v. Jamison*, 10 Mo. App. 35 ; *Fitzpatrick v. Gebhart*, 7 Kan. 47. *Fifth.* Because the statutes of Missouri can have no extra territorial force. *Railroad v. Thompson*, 31 Kan. 193 ; *Vawter v. Railroad*, 84 Mo. 679 and 65 Mo. 349. The law is, and always has been, that in a shipping contract "the place of delivery is a material and important part of the contract, and no reason exists why a failure to deliver should not be controlled by the laws which prevail at the place of delivery." *Curtis v. Railroad*, 74 N. Y. 116 ; *Stix v. Mathews*, 69 Mo. 37 ; *Roach v. Foundry*, 21 Mo. App. 118. The attempt in the statute to give a right of action in favor of the Missouri carrier against the negligent carrier in another state is mere *brutum fulmen*, for no such liability could be enforced. *Warren v. Mayor*, 2 Gray, 84 ; *Allen v. Louisiana*, 103 U. S. 83 and 84. ( 6 ) It is not within the constitutional competency of the legislature to cast upon one person, who is without the suspicion of fault or neglect, a liability for the default, negligence and miscarriage of one with whom he has no contractual

relations. *Railroad v. Lackey*, 78 Ill. 55. (7) Said act, as construed by the court, is unconstitutional, because it is, in effect, a regulation of interstate commerce. *Henderson v. New York*, 82 U. S. 259; *Railroad v. Commissioners*, 19 Fed. Rep. 679, 708; *Carton v. Railroad*, 59 Ia. 148; *Railroad v. Council Bluffs*, 45 Ia. 338; *Pickard v. Pullman*, 117 U. S. 34; *Chy Lung v. Freeman*, 92 U. S. 275; *Hall v. DeCuir*, 95 U. S. 487. (8) Laws which limit one in his choice of trade and profession, or confine him to work or live in a specified locality, or exclude him from his own house, or restrain his otherwise lawful movements, [are infringements upon his fundamental rights of liberty, which are under constitutional protection. *In the Matter of Jacobs*, 98 N. Y. 98; *Butchers' Union Cases*, 111 U. S. 765; *In re Sam Kee*, 31 Fed. Rep. 680; *In re Quong Woo*, 31 Fed. Rep. 232; *Laundry Cases*, 26 Fed. Rep. 611.

*Ramey & Brown* for respondent.

(1) The statute relied on, according to a fundamental rule of construction, must be permitted to have some effect in some supposable case. If the appellant's position, that it is only operative in cases where the goods are received under a contract to carry them over the connecting line, be true, then the statute becomes wholly inoperative, because in that case the carrier receiving the goods becomes liable, under the terms of his contract, not only for loss occurring through the negligence of the connecting carrier, but is an insurer of the goods over the connecting line as well as its own. So that to give the statute any effect we must apply it to those cases in which the receiving carrier does not contract to carry over the connecting line. This simply drives us to the position of giving to the statute the plain meaning necessarily conveyed by its words—that when a common carrier receipts for goods to be carried

Dimmitt v. The Kansas City, St. J. & C. B. Ry. Co.

and delivered to a connecting carrier, the carrier so receipting shall be liable for all loss or damage occurring through the negligence of the connecting carrier. (2) And the carrier receiving the goods will not be permitted to contract against the effect of such negligence. *Heil v. Railroad*, 16 Mo. App. 363; *Orr v. Railroad*, 21 Mo. App. 333; *Craycroft v. Railroad*, 18 Mo. App. 487. (3) In this case the appellant has not attempted to do so. The bill of lading expresses exactly the contract which the law always implies from the simple receiving, by a carrier of goods marked to a point beyond its line. Lawson on Contracts of Carriers, sec. 237, and cases cited; *Lesinsky v. Dispatch Co.*, 10 Mo. App. 134; *Condon v. Railroad*, 18 Am. & Eng. R. R. Cas. 574; *Peterson v. Case*, 18 Am. & Eng. R. R. Cas. 578. (4) The failure to perform a duty, imposed either by law or by contract, is negligence (2 Bouvier's Law Dic. 279, *et seq.*); and in this case it was the duty of the Chicago & Northwestern Railway Company to deliver the goods to Dougherty & Co., the connecting carrier to whom they were consigned. *Lesinsky v. Dispatch Co.*, 10 Mo. App. 134; *Rawson v. Holland*, 59 N. Y. 611; *Condon v. Railroad*, 12 Am. & Eng. R. R. Cases, 574; *Peterson v. Case*, 18 Am. & Eng. R. R. Cases, 578.

BRACE, J.—This case is certified here from the Kansas City court of appeals as one involving a constitutional question. The material averments of the petition are that the plaintiffs delivered to the defendant at the city of St. Joseph, in the state of Missouri, one box in good order containing six thousand cigars of the value of $315, marked and consigned to one J. McAleer at the city of Deadwood, in the territory of Dakota, to be carried and delivered to said consignee at said Deadwood, according to said marks and directions; that said defendant then and there received said box of cigars for the purpose aforesaid and issued to plaintiff the following receipt or bill of lading:

"Received at St. Joseph, Mo., 6-10, 1881,
" *From J. W. Dimmitt & Co.*,
"In apparent good order, by the Kansas City, St. Joseph & Council Bluffs Railroad Company, the following articles marked as below, which are to be delivered without unnecessary delay in like good order, at Omaha station, to consignee or owner, or to such company or carriers as per marks and directions in margin, subject to its charter, freight regulations and agreements.

"In witness whereof, The agent of said railroad hath affirmed to three bills of lading, all of this tenor and date, one of which being accomplished, the others to stand void :

| "MARKS AND CONSIGNEES. | NO. PKS. | ARTICLES. | WEIGHT. |
|---|---|---|---|
| J. W. McAleer, Deadwood, D. T., via Ft. Pierre. Acct. Dougherty & Co. | 1 | Box Cigars, strapped, corded and sealed. | 200" |

The defendant carried said box to Omaha and delivered the same to the Chicago & Northwestern Railroad Company, which company carelessly and negligently failed to deliver said box to said Dougherty & Co., whereby said cigars became worthless and were totally lost to plaintiffs.

The answer of the defendant was a general denial. The case was tried by the court without a jury upon the following agreed statement of facts :

"It is agreed between the parties hereto, for the purposes of a trial of this cause only, that : The plaintiffs are partners in business at St. Joseph, Missouri ; the defendant is a corporation duly incorporated and organized for railroad purposes, and engaged in the business of a common carrier over its line of railway, which extends from Kansas City, in the state of Missouri, through St. Joseph, in said state, to Omaha, in the state of Nebraska, which latter is its northern terminus ; that the Chicago & Northwestern Railroad Company is

a corporation duly incorporated and organized for railroad purposes, owning and operating a railroad from Omaha, Nebraska, to Ft. Pierre, Dakota, and engaged in the business of a common carrier over the same.

"That Deadwood, the destination of the goods hereinafter mentioned and the residence of J. McAleer, is in Dakota, several hundred miles from Omaha, and not upon the line of any railroad ; that the usual route and course of transportation of freights from St. Joseph to Deadwood is over the defendant's road to Omaha, thence over the Chicago & Northwestern railroad to Ft. Pierre, and thence by wagons and teams of Dougherty & Co. to Deadwood.

"That on the fifteenth day of June, 1881, the plaintiffs delivered to the defendant, at St. Joseph, the goods described in the account, or bill of items attached to the petition herein, of the value therein stated, in a box marked 'J. McAleer, Deadwood, Dakota Territory, via Ft. Pierre, care Dougherty & Co.,' and presented at the same time a receipt or bill of lading furnished and prepared by them (being the same attached to the petition) to the station agent of the defendant at St. Joseph, who received said goods, and signed and delivered said receipt as and for the shipment of the goods in said bill of items described over defendant's road.

"That, under the stipulations and terms of said receipt, or bill of lading, attached to the petition, the defendant carried promptly and seasonably said box to Omaha, and seasonably delivered the same to the Chicago & Northwestern Railway Company, a connecting carrier at that point, for further transportation towards their destination, marked in the manner above stated.

"That said box of cigars, after being carried by said Chicago & Northwestern Railway Company to Pierre Station, on its line, was there stored for a long time in its warehouse, and afterwards sold by it for

account of whom it might concern, and to pay storage charges, and was not delivered to said McAleer at Deadwood.

"That plaintiffs have paid no sum or amount, whatever, for the carriage of the goods, either to the defendant or any other.

"That there was no contract between plaintiff and defendant save that which is recited in the bill of lading or receipt attached to the petition, which was entered into under the foregoing facts and circumstances."

The court declared the law of the case by the following instruction given at the request of plaintiff:

"If the acts of the Chicago & Northwestern Railway Company, set out in the agreed statement of facts herein, were careless and negligent, and the loss of plaintiffs' cigars was caused solely by such negligence, the finding and judgment should be for plaintiffs for the value of said cigars." Found for the plaintiffs, and and from the judgment in their favor on such finding the defendant appeals.

The decision of the trial court involves the proper construction of section 598, Revised Statutes, 1879, which reads as follows: "Whenever any property is received by a common carrier to be transferred from one place to another, within or without this state, or when a railroad or other transportation company issues receipts or bills of lading in this state, the common carrier, railroad or transportation company issuing such bill of lading shall be liable for any loss, damage or injury to such property, caused by its negligence or the negligence of any other common carrier, railroad or transportation company, to which such property may be delivered, or over whose line such property may pass; and the common carrier, railroad or transportation company issuing any such receipt, or bill of lading, shall be entitled to recover, in a proper action, the amount of any loss, damage or injury it

may be required to pay to the owner of such prop-
erty, from the common carrier, railroad or transpor-
tation company, through whose negligence the loss,
damage or injury may be sustained." This statute was
first enacted in 1879.

It is suggested in the brief of counsel for appellant
that this statute is violative of some constitutional pro-
visions, under a construction which would render the
defendant liable in this case. In order to determine
whether it is obnoxious to any constitutional inhibi-
tions, state or national, it becomes necessary first, to
ascertain its true scope and meaning. At the time of its
enactment, the law was as well settled as now that a
common carrier may *contract* to carry to a place beyond
the terminus of his route and thereby render himself
liable as such for the whole distance, but that he is not
*required* by law to transport beyond his own line, and,
therefore, may stipulate that he shall not be liable
except for such loss or damage as may occur on his
own route.

While there was a universal consensus of opinion
upon these propositions, there was a diversity of opin-
ion as to what should be evidence of a contract for
through carriage when no special contract was made ;
the English and the courts of some of the states hold-
ing that "where a common carrier takes into his care a
parcel directed to a particular place and does not, by
positive agreement, limit his responsibility to a part
only of the distance, it is *prima facie* evidence of an
undertaking on his part to carry that parcel to the
place to which it is directed," although such place was
beyond the terminus of his own route. Lawson on
Carriers, sec. 239. The majority of the American
courts, however, holding "that where a carrier receives
goods marked for a particular destination, beyond the
route for which he professes to carry, and beyond the
terminus of his road, he is only bound to transport and
deliver them according to the established usage of his

business, and is not liable for losses beyond his own line." Lawson on Carriers, sec. 240.

In 1870, this court in the case of *Coates v. Express Co.*, 45 Mo., adopted what may be called the American doctrine on this subject, quoting with approval the language following of Prof. Parsons, formulating the rule: "The prevailing rule in this country may now be said to cast upon the carrier no responsibility as a carrier beyond his own route, * * * unless the usage of the business or of the carrier, or his conduct or language, shows that he takes the parcel as carrier for the whole route."

This ruling was followed in *Snider v. Express Co.*, 63 Mo. 376, decided in 1876. The consideration given by the supreme court to this question, and the conclusion reached by it so recently before this enactment, when taken in connection with the terms employed in the statute itself, leaves little room for doubt that the purpose of the legislature was to prescribe a definite rule of liability for negligence of a common carrier in harmony with what has been denominated "the English rule" upon the subject. Whereby such carrier, when he receives a parcel to be transported to a place beyond the terminus of his route, is to be held liable as such to the place of destination, in the absence of a specific contract to carry such parcel only to the terminus of his own route, or limiting his liability to loss or damage occurring on his own route. The enactment as thus construed becomes a rule of evidence by which to determine what the contract of the carrier is in the absence of a specific one in a given case, operates with no undue hardship upon the carrier, and is violative of none of his rights, constitutional or otherwise.

By its provisions the act of acceptance by a common carrier of property to be transferred to a place beyond the terminus of its route is evidence of a contract to carry such property to the place of its destination. The act of issuing a receipt or bill of lading for property

to be transferred to a place beyond the terminus of the route of a common carrier is evidence of a contract by such carrier to carry such property to the place of its destination. This *prima facie* case the statute makes for the plaintiff on the facts stated. In order to defeat it, the defendant must show, that by specific agreement it only contracted to carry the property to the terminus of its own line, or, what is equivalent, that there was a specific agreement that it was to be liable only for loss or damage occurring on its own line. The evidence in the case fails to show any such specific agreement. On the face of the whole transaction, it was evidently a through shipment from St. Joseph, Missouri, to Deadwood, Dakota Territory, and was so regarded by both parties. Under the statute the receipt of the goods and the issuance of the bill of lading concludes all questions as to the authority of the agent to contract for the delivery of the goods at the point of destination.·

The goods were lost to the plaintiff by the negligence of the Chicago & Northwestern Railroad Company, the defendant's agent to whom it intrusted the goods to be transported and delivered under the bill of lading to Dougherty & Co., at Ft. Pierre, and we do not find in the case any valid constitutional objection to a recovery against the defendant for such negligence.

If we are correct in the construction placed upon section 598, *supra*, it is not obnoxious to the provisions of the federal constitution vesting in congress the power to regulate commerce among the several states or to any other constitutional provision, federal or state, to which our attention has been directed by counsel.

The judgment of the circuit court of Buchanan county is, therefore, affirmed. SHERWOOD, C. J., BLACK and BARCLAY, JJ., concur.