Popham v. Barnard.

GEORGE POPHAM, Respondent, v. J. F. BARNARD, Receiver, etc., Appellant.

Kansas City Court of Appeals, January 2, 1899.

1. **Common Carriers**: LIABILITY BEYOND LINE: LIMITING CARRIER. If the carrier absolutely binds himself to carry to destination he can not escape liability beyond his own line by an exemption clause in his contract, but he can evoke the aid of such clause if he contracts to carry only to the terminus of his own line; and the contract in this case is of the latter class. ELLISON and GILL, JJ., concurring in a separate opinion: The carrier is *prima facie* liable and in order to escape liability must stipulate that it is only liable to carry on its own line.

2. ———: ———: ———: NEGLIGENCE IN INCEPTION OF SHIPMENT. Though the carrier's contract be only over his own line and contains an exemption from negligence beyond his own line, yet he is liable for damages resulting from his negligence at the inception of the shipment though such damages occur beyond his line.

3. ———: ———: ———: PROXIMATE AND SOLE CAUSE. When loss occurs from any of the causes excepted in a contract, such exception must be the proximate and sole cause of the damage, or the carrier is liable.

4. ———: NOTICE OF LOSS: REASONABLENESS OF THE RULE: KNOWLEDGE OF THE CARRIER. Where a contract of affreightment requires verified notice of loss in five days after the goods reached their destination, and the consignor does not learn of the nature and extent of the loss for more than a month after the same occurred, the application of the rule is unreasonable; and especially is this the case where the carrier is apprised of the damage quite as well as the shipper.

*Appeal from the Nodaway Circuit Court.*—HON. C. A. ANTHONY, Judge.

AFFIRMED.

ED. E. ALESHIRE and J. G. TRIMBLE for appellant.

(1) Defendant was not liable to plaintiff on account of the freezing of the apples, for the reason that by the terms of the contract defendant exempted himself from liability for damage by freezing, as appears by paragraph second in bill of lading. (2) Plaintiff offered some proof tending to show that defendant company had a rule concerning the placing of stoves in cars of merchandise, but the rule—if plaintiff had one—was not offered in evidence; hence on that ground there was no liability. Wolf v. Am. Express Co., 43 Mo. 421; Read v. Railroad, 60 Mo. 199. (3) It is admitted by the agreed statement that the apples did not freeze while on defendant's line, and that they were turned over to the Great Western Railroad Company, a connecting carrier, seven miles from point of shipment, and receipted for by the latter company in good condition. The demurrer to the evidence offered by the defendant should have been given. Glass Co. v. Railroad, 44 Mo. App. 416; Publishing Co. v. Express Co., 44 Mo. App. 421; Hill v. Railway, 46 Mo. App. 517; Hance v. Railroad, 56 Mo. App. 476; Larimore v. Railroad, 65 Mo. App. 167; Dimmitt v. Railway, 103 Mo. 433; Nines v. Railway, 107 Mo. 475;

McCann v. Eddy, 133 Mo. 59. The mere marking on the margin of the bill of lading of a destination beyond defendant's terminus of line does not impart an agreement to carry to the destination named. Ortt v. Railroad, 31 N. W. Rep. (Minn.) 519. (4) Appellant contends that his demurrer to the evidence should have been given, for the further reason that plaintiff failed to comply with paragraph five of the bill of lading. "It is further stipulated and agreed that no claim for loss or damages which may accrue to the owner of the goods herein named shall be allowed," etc. The plaintiff not only failed to make his claim within the five days mentioned therein, but from the testimony it clearly appears that he never, at any time, complied with the terms of this paragraph, and the suit was instituted more than six months after the shipment of apples and no reason or excuse has been, or could be, offered for this failure. The courts have repeatedly passed upon this question. Massengale v. Telegraph Co., 17 Mo. App. 257; Brown v. Railroad, 18 Mo. App. 568; McBeath v. Railway, 20 Mo. App. 445; Thompson v. Railroad, 22 Mo. App. 321; Oxley v. Railway, 65 Mo. 629; Rice v. Railway, 63 Mo. 314; Dawson v. Railway, 76 Mo. 514.

E. A. VINSONHALER for respondent.

(1) To relieve the carrier from liability on account of loss from a cause excepted in his contract, it must appear that the excepted cause is the proximate cause and the sole cause of the loss. Read v. Railroad, 60 Mo. 199–206. Here the damage is the result of improper facilities for transportation and defendant can not shield himself behind this bill of lading. 5 Am. and Eng. Ency. of Law [2 Ed.], 175; Udell v. Railroad, 13 Mo. App. 254; Potts v. Railroad, 17 Mo. App. 394.

Popham v. Barnard.

(2) The damage occurred on account of the negligence of defendant in furnishing us a car that would not protect the apples, unless heated, and then refusing to allow us to heat it. Had it not been for this negligence of the defendant, the evidence shows the damage would not have been done. See cases cited under 1. McCann v. Eddy, 133, Mo. 59, 69. (3) We gave notice in writing as soon as the damage was ascertained. Had defendant complied with his own rules, and allowed us to accompany the shipment, we might have complied with this rule. It was impossible under the circumstances for the shipper at Bedison, Missouri, to ascertain the damage at St. Paul, Minnesota, make oath to it and deliver it in Council Bluffs, Iowa, within five days. Whether the rule is reasonable depends upon the circumstances of each case, and the court will determine it. Richardson v. Railroad, 62 Mo. App. 1; Rice v. Railroad, 63 Mo. 314; 5 Am. and Eng. Ency. of Law [2 Ed.], 326. The carrier was aware of the loss and this rule has no application here. 5 Am. and Eng. Ency. of Law [2 Ed.], 324.

SMITH, P. J.—The case shortly stated is this: The defendant, at the request of the plaintiff, furnished the latter a car in which to transport two hundred and sixty barrels of apples from Bedison, a station in this state on the line of the former's railway to St. Paul, in the state of Minnesota. On receipt of the apples by defendant his agent delivered to the plaintiff a bill of lading which contained, amongst others, the following provisions: "Received from Geo. Popham the following packages, marked and numbered as per margin, *to be transported by the said Omaha & St. Louis Railway Company, and the forwarding lines with which it connects, until the same shall have reached the point named in the margin*

STATEMENT.

*of this contract,* on the following express terms and conditions, to wit:  *  *  *  3.  'All goods received under this contract will be subject to all necessary cooperage at the owner's cost, and said railway shall not be held accountable for any damage to or deficiency in packages, after the same shall have been receipted for, in good order, by consignees or their agents, or the next succeeding carrier.''

From a statement of certain facts agreed presented by the record it appears:

1.  That defendant, as receiver in charge of said railway, at Bedison, a station thereon, in said county of Nodaway, state of Missouri, received of this plaintiff one car, No. 2374, M. K. & T., loaded with two hundred and sixty barrels of apples, in good condition, on the twelfth day of November, 1896, to be transported by the defendant, as a common carrier, over said railroad and its connecting lines, to the city of St. Paul in the state of Minnesota.  2. That said car, so loaded with apples, was on the same day delivered and receipted for in good condition by the defendant to its connecting line, the Great Western Railroad, at the junction of said railroads at Conception, being seven and a half miles from Bedison, and was by said Great Western Railroad carried to the destination named, and there delivered to the consignees, DeCamp & Beyer, on November 14, 1896. 3.  That when said apples were delivered to the consignees, as aforesaid, they were badly frozen and the damage done by such freezing, if the defendant is found liable therefor, may be fixed at $175.

At the trial in the circuit court the defendant interposed a demurrer to the evidence which was overruled.  The plaintiff had judgment and defendant appealed.

In determining the effect that should be given to

the exemption clause of the contract already quoted it becomes necessary to first ascertain from the terms of that instrument the nature and extent of the defendant's undertaking. If he unconditionally and absolutely bound himself thereby to carry the plaintiff's apples from Bedison to St. Paul the exemption clause thereof can not be invoked to relieve him from liability. R. S., sec. 994; McCann v. Eddy, 133 Mo. 59; Dimmitt v. Railway, 103 Mo. 433. If, on the other hand, by the terms thereof he only undertook to carry the plaintiff's apples to the terminus of his own line and there deliver them to the connecting carrier, and not to carry them from the place of shipment to that of destination over his own and other connecting lines, then the clause exempting him from liability for loss or damage to the apples through the negligence of the carrier to which they were delivered for transportation to their destination must be held effective. This proposition is supported by all the recent decisions of the appellate courts of this state, including that of McCann v. Eddy, *supra;* Glass Co. v. Railroad, 44 Mo. App. 416; Pub. Co. v. Express Co., 44 Mo. App. 421; Hill v. Railway, 46 Mo. App. 517; Hance v. Railroad, 56 Mo. App. 476; Larimore v. Railroad, 65 Mo. App. 167; Dimmitt v. Railway, 103 Mo. 433; Nines v. Railway, 107 Mo. 475.

Turning to the first clause of the contract and it is seen that the defendant received the plaintiff's apples "to transport by the said Omaha and St. Louis Railway Company and its forwarding lines with which it connects until the same shall have reached the point named in the margin," the destination. The language of the contract of affreightment in McCann v. Eddy, as will be seen by reference to that case, was that the carrier there agreed to transport the shipper's cattle

COMMON carriers: liability beyond line: limiting carrier.

*"from Stoutville Station, Missouri, to Chicago, Illinois, Station."* There was an "unconditional and absolute" undertaking by the carrier to transport the shipper's cattle from the point of shipment to that of consignment. While here, as has been seen, the defendant did not enter into such a special undertaking.

But in this connection it is proper to advert to another pertinent consideration, which is, that the undisputed evidence tends to prove that the defendant failed to furnish plaintiff a reasonably safe and well protected car in which to transport his apples, and in which to protect them against the severity of the weather while in transit. There was a rule of the company given in evidence which provided that: "During cold weather, when perishable property is liable to be damaged by frost, a pass may be given to one person who may be in charge of and accompanying shipments of one or more car loads of green fruits, potatoes or other vegetables, when a stove is used for protection of such property from freezing." The plaintiff asked leave of defendant's agent to place a man in charge of the car with a stove to be used to protect his apples from freezing. Although the temperature at St. Paul, the place of consignment, was on November 12, the day of the shipment, seven degrees below zero, the defendant's superintendent refused plaintiff's request, insisting that the proposed precaution was unnecessary. While the apples were in transit over the line of the connecting carrier they were damaged by freezing. If the plaintiff had been permitted to avail himself of the privilege accorded by the defendant's rule as he endeavored to do, it is reasonable to suppose the damage would not have occurred on either line. The rule is that if a carrier can by the exercise of reasonable

*Marginal note:* negligence in inception of shipment.

care and the use of reasonable means protect from freezing perishable property intrusted to him for transportation he is obliged to do so. And if in consequence of his neglect in that regard the property freezes he is liable for the resulting damages. Udell v. Railway, 13 Mo. App. 254. It is the primary duty of common carriers to furnish vehicles suitable in every respect, including strength and mode of construction, for the safe transportation of such property as is usually carried by them. Potts v. Railway, 17 Mo. App. 394, and authorities there cited.

If a carrier would exonerate himself from responsibility, he must either deliver the goods or prove the loss by the act of God, the public enemy, or by reason of some special exemption contained in the contract. When the loss occurs from any of the causes excepted in the contract, the exception must be the proximate and sole cause of the loss. Read v. Railway, 60 Mo. 199. Though the freezing of plaintiff's apples and the consequent damage thereto occurred after the same had been received in good order by the succeeding carrier, yet it is clear that the negligence of such succeeding carrier was not the proximate and the sole cause of the damage. Though the succeeding carrier may have neglected to exercise reasonable care or to use reasonable means to protect plaintiff's apples while in transit over its line, yet if the defendant had at the inception of the transit performed the duty injoined upon it by law, as already indicated, the damage would not have happened. And therefore the conclusion is irresistible that the negligence of the succeeding carrier was not the proximate and sole cause of the damages. And even if the damage was referable to the negligence of the succeeding carrier, yet, since it appears that that of the defendant mingled

*proximate and sole cause.*

Popham v. Barnard.

with it, it must follow that such damage was not within the exemption clause of the contract and therefore the defendant is liable.   Read v. Railway, *supra.*

Defendant contends that his demurrer to the evidence should have been sustained for the further reason that plaintiff failed to comply with paragraph 5 of the contract, which is as follows: Paragraph 5. "It is further stipulated and agreed that no claim ——: notice of loss; for loss or damage which may accrue to reasonableness of the rule: knowl- the owner of the goods herein named shall edge of the car- be allowed or paid by this railway or any rier. connecting line unless such claim shall be made by the owner or his agent, in writing, verified by affidavit, setting forth the nature and extent of such loss or damage, and so verified, delivered or forwarded by mail to the freight claim agent of this railway, at Council Bluffs, Ia., within five days after such goods arrive at their destination."   It appears, from the evidence, that four days after the plaintiff's apples were shipped he received a telegram from his commission merchant at St. Paul informing him of the arrival and frozen condition of the same.   The testimony of plaintiff was that he had no means of knowing the "nature and extent of his damage" until more than a month after the same accrued.   The nature and extent of the damage had necessarily to be ascertained at St. Paul, several hundred miles away from the place where the plaintiff resided.   The apples had to be first disposed of.   This necessarily required considerable time.   The rule, in its application to the facts of the present case, seems to us to be most unreasonable.   Compliance by the plaintiff with its terms was impossible.   The law itself never requires an impossible thing to be done and any stipulation of a contract which does so will be disregarded by it.

Besides this, the succeeding carrier which was

selected by defendant to carry forward the plaintiff's apples and to collect of the consignee its *pro rata* part of the freight charges and account to it therefor was, as appears from the face of the expense bill, advised of the frozen condition of the apples, so that it seems that the defendant was quite as well apprised of the damage as the plaintiff.   Under such conditions no reason is seen why the plaintiff should have been required to give the defendant notice, if the object of the law in requiring notice in such cases is simply to afford the carrier an opportunity to inquire into the loss so that unjust claims may be thwarted.   Richardson v. Railway, 62 Mo. App. 1.   It is clear to us that the rule, in its application to this case, is entirely unreasonable in its requirements, and the fact that the plaintiff failed to comply therewith can not be made available to the defendant as ground upon which to defeat the former's claim.

The action of the circuit court in overruling the defendant's demurrer was, in our opinion, not error, and accordingly the judgment will be affirmed.   All concur.

ELLISON and GILL, JJ.—Fearing that expressions in the foregoing opinion by Judge Smith would convey the impression that, when freight is received by the carrier for shipment to a destination beyond his own line, it was necessary that he should contract to carry to the point of destination before he would be liable for negligence of a connecting carrier, we deem it prudent to state that when the carrier receives freight for shipment to a point beyond his own line he will be so liable, though he does not contract to carry to destination.   He will be liable unless he contracts to carry *only on his own line.*   Receiving freight for shipment to a point beyond his own line is, *prima facie,* an agree-

ment to carry to that point and it is necessary, in order to escape liability, that he should stipulate that he is only to carry on his own line. McCann v. Eddy, 133 Mo. 59; Bank v. Railway, 72 Mo. App. 82; Marshall v. Railway, 74 Mo. App. 81.