## NINES v. THE ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, *Appellant.*

### DIVISION TWO.

1. **Common Carrier:** LIABILITY BEYOND TERMINUS OF ROUTE: STATUTE: CONSTITUTION.  Section 598, of the Revised Statutes of 1879, providing that common carriers, receiving property to be transported to places beyond their termini, are liable as such carriers to the place of the destination of the property, in the absence of special contract to the contrary, is constitutional. (*Affirming Dimmitt v. Railroad,* 103 Mo. 433.)

2. ——— : ———: SPECIAL CONTRACT.  A carrier receiving property to be transported beyond its terminus may by special agreement restrict its liability to such loss or damage only as occurs on its own line.

*Appeal from Mississippi Circuit Court.*—W. N. RANDOLPH, ESQ., Special Judge.

REVERSED AND REMANDED.

*H. S. Priest* and *M. L. Clardy* for appellant.

The instruction given by the court at the instance of the plaintiff is erroneous.  *First.*  Because it directed the jury to find the issues against the defendant if satisfied from the evidence that the melons were damaged while being transported by some other carrier, thus ignoring the contract of affreightment which expressly limited defendant's liability to injuries occurring on its own line.  *Reed v. Railroad,* 60 Mo. 199 ; *Ketchum v. Express Co.,* 52 Mo. 390 ; *Snider v. Express Co.,* 63 Mo. 376 ; *O'Brien v. Kinney,* 74 Mo. 125 ; Hutchison on Carriers, secs. 233, 234, 235, 236, 237 ; R. S. 1879, sec. 598 ; *Dimmitt v. Railroad,* 103 Mo. 433.  *Second.*  The instruction is wrong because it directed the jury to find for the plaintiff on all the counts of the petition if

107 475
56a 290
56a 481
56a 660
107 475
65a 170
107 475
77a 624
107 475
f 89a 442
107 475
177 ²651

they believed that the melons were injured or damaged, whereas two of the counts in the petition are based on alleged excessive freight charges.

*Burrough, Arnold & Boone* for respondent.

THOMAS, J.—The petition, which contains five counts, avers that, in the year 1883, "the St. Louis, Iron Mountain, or in other words the Missouri Pacific and leased and operated lines," had a contract with the Chicago, Burlington & Quincy; the Keokuk & St. Louis railway; the Chicago, Milwaukee & St. Paul railway, and the Minneapolis & St. Louis railway for the purpose of receiving within the territory along their respective routes freight, produce, fruit, etc., to be carried over their lines and delivered according to consignment, the tariff of charges for the carriage thereof being distributed and received by each of said roads in proportion to the distance each road should carry the same.

The first count is for an alleged excessive freight charge of $29.88 on a carload of melons shipped from Diehlstadt, on the line of defendant's road, to Dubuque, Iowa, on the Keokuk & St. Louis railway. There was a verdict for the defendant on the second count.

The third count is for damage to a carload of melons shipped from Diehlstadt to LaCrosse, Wisconsin, over the St. Louis, Iron Mountain & Southern railway and the Chicago, Burlington & Quincy railway, by reason of an alleged delay in the arrival of the car at LaCrosse.

The fourth count is for an alleged freight overcharge on the car of melons mentioned in the third count. The fifth and last count is for damages arising, it is alleged, from the car which was loaded with melons being broken open and robbed while in transit.

The amended answer of defendant, after denying the allegations of the petition, states that by the terms of the contract of shipment the defendant did agree and undertake to ship the melons to the city of St. Louis,

its terminus, and there deliver them in good condition to the connecting carriers; that such contract expressly limited its liability to such loss or damage as might occur on its own line.

While the evidence tends to show that, at the time of the arrival of the cars at their respective destinations, the melons had been damaged, it further shows that the cars arrived in St. Louis, the terminus of defendant's railroad, and were transferred to the connecting carriers in due time, and that whatever damage was sustained occurred on the connecting lines.

The plaintiff recovered judgment for $36.14, on the first count; $121, on the third; $44.77, on the fourth, and $393.25, on the fifth, making a total of $595.16.

The defendant, in its motion for new trial, raised the question of the constitutionality of section 598, Revised Statutes, 1879, which is as follows: "Whenever any property is received by a common carrier to be transferred from one place to another, within or without this state, or when a railroad or other transportation company issues receipts or bills of lading in this state, the common carrier, railroad or transportation company issuing such bill of lading shall be liable for any loss, damage or injury to such property, caused by its negligence or the negligence of any other common carrier, railroad or transportation company to which such property may be delivered, or over whose line such property may pass; and the common carrier, railroad or transportation company issuing any such receipt or bill of lading shall be entitled to recover, in a proper action, the amount of any loss, damage or injury it may be required to pay to the owner of such property, from the common carrier, railroad or transportation company, through whose negligence the loss, damage or injury may be sustained." And hence an appeal was taken to this court instead of the St. Louis court of appeals.

This question has been decided by this court adversely to defendant since this appeal was taken.

*Dimmitt v. Railroad,* 103 Mo. 433. We adhere to the result reached in the *Dimmitt case,* and, therefore, rule the constitutional point against the defendant.

II. The bill of lading of melons shipped for plaintiff, among others, contained the following stipulation : " It is further especially understood, that for all loss or damage, occurring in the transit of said packages, the legal remedy shall be against the particular carrier only in whose custody the said packages may actually be at the time of the happening thereof, it being understood that the Missouri Pacific Railway Company, in receiving the said packages to be forwarded as aforesaid, assumes no other responsibility for their safe carriage than may be incurred on its own road."

The court at the instance of plaintiff instructed the jury as follows : " The court instructs you that if you find from the evidence that the defendant as a common carrier in the months of August and September, 1883, received from the plaintiff at Diehlstadt, in this state, the produce alleged in the petition to be transferred by it to any point without this state, and that said produce became lost or depreciated in value by reason of the negligence or carelessness of any other railroad company to whom such produce was delivered by defendant, then you should find for the plaintiff in such sum as the evidence may show him to be entitled to, not exceeding the amount demanded in the petition, together with six-per-cent. interest from the date of filing this suit."

The defendant asked the court to instruct the jury that it was not liable for any loss or damage occasioned by any delays or negligence occurring upon any other line of railroad than defendant's, which the court refused to do, and this is assigned for error. This point, we think, is well taken, and is settled by the *Dimmitt case, supra.* The court there said : "The act of issuing a receipt or bill of lading for property to be transferred to a place beyond the terminus of the route of a common carrier is evidence of a contract by such

·carrier to carry such property to the place of its destination. This *prima facie* case the statute makes for the plaintiff on the facts stated. In order to defeat it the defendant must show that by specific agreement it only contracted to carry the property to the terminus ·of its own line, or, what is equivalent, that there was a specific agreement that it was to be liable only for loss or damage occurring on its own line."

The defendant having made a specific agreement to be liable only for loss on its own line, the only question ·of fact to be submitted to the jury was where the damage occurred. The instruction given for plaintiff was, therefore, erroneous, and that asked by defendant ·ought to have been given. The judgment will be reversed and the cause remanded for new trial. All ·concur.